James David Peacock v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-345-CR

     JAMES DAVID PEACOCK,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 66th District Court
Hill County, Texas
Trial Court # 30,766
                                                                                                                
                                                                                                            
DISSENTING OPINION
                                                                                                                
   
     The majority declares an attempt to assert the due-diligence defense to a motion to revoke
community supervision dead-on-arrival. 
      The facts are straightforward. Peacock was on community supervision for two
years—from July 1, 1997 to July 1, 1999. On April 20, 1998, the State filed a motion to
revoke his community supervision, and the court issued a capias for his arrest. The only effort
the State made to detain Peacock was to register the capias issued for his arrest with the Texas
Criminal Information Management System (TCIC) and send a letter to his “last” mailing
address (a Post Office Box in Whitney) advising him that a warrant for his arrest had been
issued. Both things were done two days after the capias was issued. On September 26, 1999,
over seventeen months after the issuance of the capias and some three months after his
community supervision expired, the capias was served on Peacock.
      The majority finds that the State has established due diligence, relying on the letter and the
State’s action in registering the warrant on TCIC. Nothing else in the record supports the
finding of due diligence.
Standards
      This appeal raises several questions: What is the standard by which the State must prove
that it exercised due diligence in executing an arrest warrant issued after a motion to revoke
community supervision is filed? Has the State met the burden to show that it exercised due
diligence in this case? What is the standard of review by which we review the trial court’s
decision that the State discharged its burden? 
      As we noted in Burch v. State, 821 S.W.2d 385, 387 (Tex. App.—Waco 1991, no pet.):
 
. . . , a court has jurisdiction to revoke probation after the probationary period expires
if (1) a motion to revoke is filed before the term of probation expires and (2) a capias or
warrant is issued prior to the expiration of the probationary period. Once these
jurisdictional requirements have been established, they must be followed by proof from the
State by a preponderance of the evidence that: (1) the defendant violated a term or
condition of his probation; and, if due diligence is raised at the revocation hearing then,
(2) due diligence was exercised to apprehend the defendant and (3) due diligence was
exercised to hear the motion to revoke. See Shaw v. State, 622 S.W.2d 862, 863 (Tex.
Crim. App. [Panel Op.] 1981) (holding that the standard of proof in revocation
proceedings is a preponderance of the evidence). 

      The majority correctly asserts: “Once the defendant meets the burden of production by
raising the due-diligence issue at the revocation hearing, the State incurs the burden of
persuasion to show that it exercised due diligence.” Brecheisen v. State, 4 S.W.3d 761, 763
(Tex. Crim. App. 1999). The majority, citing Burch, says that proof of diligence is required
by a preponderance of the evidence. Burch, 821 S.W.2d at 387. Burch, however, relies on
the general rule that the State’s burden in revocation cases is the preponderance standard. Id. 
It does not speak directly to proof of diligence. Thus, the standard of proof of diligence at the
trial level remains in question.
      In the cases by the Court of Criminal Appeals cited by the majority, the Court appears to
review de novo the evidence supporting the finding of due diligence. See Harris v. State, 843
S.W.2d 34, 36 (Tex. Crim. App. 1992); Rodriguez v. State, 804 S.W.2d 516, 518 (Tex.
Crim. App. 1991); Langston v. State, 800 S.W.2d 553, 555 (Tex. Crim. App. 1990). Doing
so implies that the Court believes that diligence is a question of law. However, the Court of
Criminal Appeals has never explicitly said what manner of proof is required.
      The standard of proof required in the trial court affects the standard of review by this
court. The propriety of factual determinations is generally tested by a review of the evidence
supporting the finding using legal and/or factual sufficiency standards. Other rulings are
reviewed under the abuse-of-discretion standard. Although we have been given no guidance
about how to review a determination by a trial court that the State used diligence in arresting
the defendant on a revocation warrant, I would review the evidence supporting the finding of
due diligence de novo, as the Court of Criminal Appeals did in the cited cases.
 

The Evidence
      At the hearing, the State called two witnesses—Deborah Pruitt, who identified herself as
Peacock’s “probation officer” and Mike Cook, a Hill County Deputy Sheriff. Pruitt testified
that Peacock received permission to move to Fort Worth on August 6, 1997. Peacock missed
several reporting dates after getting permission to move. Pruitt sent “letters” to Peacock’s
Whitney mailing address and he reported in October 1997. At that time, Peacock told Pruitt
that he was living in Fort Worth. When he again failed to keep a scheduled appointment, she
telephoned his mother in December 1997, and Peacock came to her office. After that visit,
Peacock did not report again and the motion to revoke his community supervision was filed. 
Pruitt specifically testified about the State’s efforts after the motion was filed:
Q (by the State):After April 20th of 1998, what did the Hill County Community
Supervision and Corrections Department do to attempt to locate James David
Peacock?
 
A:Mr. Peacock became an absconder in March of 1998. At that point he was taken
off the case load, and when the warrant was issued it was placed on the computer for
the Sheriff’s Department to arrest him.
 
Q:So do you know of anything the Community Supervision and Corrections did
other than notify the Court through a violation report or a petition that the District
Attorney filed for revocation in an attempt to locate him, or notify him of his
violations and of his need to appear in Court?
 
A:No, sir.

      Deputy Cook testified that the warrant for Peacock’s arrest was entered into TCIC on
April 22, 1998, and that a letter was sent “to his last mailing address” on the same day. He
added nothing else to the State’s proof of diligence.
 

Application
      I would find that this case is controlled by Harris. Harris, 843 S.W.2d at 36. There, the
State knew where the defendant had lived in Brazos County, knew that he had requested
permission to move to Fort Worth, and knew the address in Fort Worth where he could have
been living. The Court of Criminal Appeals found the State’s proof of diligence lacking
because:
For over two years after the capias issued, the State did nothing and has no
explanation in the record for its inaction. Even after the probation office placed
appellant on the absconder caseload in 1982, no evidence shows that anyone ever went
to [the street where the defendant lived], wrote to [the street where the defendant
lived], or made any effort to reach appellant’s brother in Fort Worth. These steps
were not taken even though the Brazos County Probation Department knew
appellant’s first College Station address and knew from his supervision request that he
could be with his brother in Fort Worth.

Id. Except for the letter mailed within days of the issuance of the capias, the State made no
effort to locate or arrest Peacock. There is no evidence that the State attempted to contact his
mother, even though an earlier effort to locate him through her had been successful, or to
contact him in Fort Worth, even though the State knew the address at which he could be
residing and had been told by Peacock that he was living there. 
      As the majority correctly notes, placing Peacock’s name in TCIC is not sufficient to show
due diligence. See id. at 35-36; Sessions v. State, 939 S.W.2d 796, 799 (Tex. App.—El Paso
1997, no pet.). I would hold that sending a single letter to Peacock’s mailing address two days
after the capias was issued constitutes no evidence of due diligence during the seventeen
months that followed before Peacock was detained. Save for the one letter, “[f]or over
[seventeen months] after the capias issued, the State did nothing and has no explanation in the
record for its inaction.” See Harris, 843 S.W.2d at 36.
      Furthermore, the State cannot rely on Peacock’s “lack of cooperation” to excuse its own
lack of diligence. See Langston, 800 S.W.2d at 555. By relying on the absence of evidence to
show where Peacock lived, the majority allows it to do just that.


 Whether Peacock lived at
the same address the entire time or whether he advised the State of his new address whenever
he moved is not the issue. See id. The burden is on the State to show what it did; there is no
burden on Peacock to show what he did, and the majority’s apparent reliance on the absence of
evidence to show where Peacock lived during the seventeen months is improper as well. 
      The State has argued that we should “re-examine” the due diligence defense and adopt the
criticism of it espoused by the concurring opinion in Connolly v. State, 983 S.W.2d 738, 741
(Tex. Crim. App. 1999) (Keller, J., concurring). Without forthrightly acknowledging so, the
majority effectively discards the due diligence defense by finding due diligence out of the “thin
air” of total inaction for over seventeen months. See id. In the courts governed by our
decisions, “due diligence” from this point forward means that any action by the State will
satisfy its burden. I cannot join this departure from the clearly established precedent.
      Thus, I would hold that the State did not exercise due diligence in arresting Peacock after
the warrant was issued on the motion to revoke his probation. See Harris, 843 S.W.2d at 36. 
I would reverse the judgment and remand the cause to the trial court with instructions to
discharge Peacock from community supervision.
      Because the majority holds otherwise, I dissent.
 
   
                                                                   BILL VANCE
                                                                   Justice



Dissenting opinion delivered and filed August 30, 2000
Publish